LOUIS A. KROPP, APPELLEE, v. MISSOURI PACIFIC RAILWAY COMPANY, APPELLANT.

FILED MAY 15, 1923.   No. 22338.

**Railroads:** INJUNCTION: WEIGHT OF EVIDENCE. When, in a suit in equity between the owner of a farm and a railroad corporation, the question at issue is the adequacy of a subway which the corporation purposed to build under its line of track to serve as a passageway for the live stock kept upon the farm, the witnesses for the farmer have not seen such a subway in actual use, but, basing their testimony upon their experience as farmers and stockmen and their general knowledge of live stock, testify that the subway will prove inadequate, while the witnesses for the railroad corporation testify that they have used similar subways or have seen them in use, and that they proved entirely adequate, the testimony of the witnesses who base their testimony upon actual use, or observation, will be held to have the greater weight.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Reversed and dismissed.*

*E. J. White, J. A. C. Kennedy* and *Yale C. Holland,* for appellant.

*D. W. Livingston, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., BUTTON, District Judge.

MORRISSEY, C. J.

Plaintiff is the owner of a farm of 160 acres in Otoe county, Nebraska, which is crossed by defendant's line of railroad. The farm buildings and feed lots, occupying approximately 20 acres, are situated upon the west side of defendant's track, while the remainder of the farm is situated on the east side of the track. Plaintiff and his grantors have owned and occupied the farm for upwards of 50 years. Defendant's track was constructed in 1887 and has been continuously operated since its construction. At a point on plaintiff's farm where it is crossed by the railroad there is a valley or depression in the surface of the earth. At this point defendant erected a trestle, or bridge, which was 12 to 15 feet in length and about 8 feet in height. When first erected this trestle served to support the track for defendant's trains, while leaving a passageway underneath the track which was used by the occupant of the farm as a runway for his live stock, and a road for his teams. As the years went on the construction of the trestle was somewhat changed by the addition of piling and the filling in of the embankment until the opening became too small for the passage of teams and wagons, but it has always remained adequate for the passage of hogs, cattle and horses from the feed lots to the pasture, and *vice versa.* In addition to this subway passage there has been, and is, maintained a grade crossing such as is in general use in this state where a farm is intersected by a line of railroad. Prior to the filing of this suit defendant made plans for the substitution of concrete boxes or subways for the wooden

trestles along its lines of track, and in the particular instance with which we are dealing it arranged to remove the wooden trestle and erect in its place a concrete box, or subway, 4 feet wide, 6 feet high, and 43 feet in length. Plaintiff brought this action to restrain defendant from making the substitution planned, claiming, so far as is necessary to mention here, that the concrete box would not furnish an adequate passageway for plaintiff's live stock. The issues were tried to the court, and from a judgment in favor of plaintiff defendant has appealed. A number of issues were presented on the trial below and argued in the brief on appeal which we shall not mention in this opinion, because it is conceded that, if the concrete box which defendant purposes to install be found adequate as a passageway for plaintiff's live stock, such finding will necessarily control the judgment of the court and a discussion of the other issues would be futile.

Plaintiff, an experienced farmer and live-stock breeder, testified that he had never seen such a subway as defendant purposed to install, and, therefore, could not say from actual experience as to its sufficiency. He stated that the only purpose for which he desired the subway was for a passageway for live stock; and that it had not been used in recent years for the passage of teams and vehicles. He described the horses upon his farm as being of the large type used for farm purpose, weighing between 1,400 and 1,600 pounds, between 5 and 6 feet tall at the withers, and about 7 feet to the top of the horses' heads when held in their natural positions. He conceded that the proposed subway would be ample for the passage of hogs, and that cattle could pass through. However, he expressed the belief that it would, to some extent, become filled with snow and ice in the winter; that this would reduce the size of the opening, make the floor of the subway slippery, with the consequent danger of animals falling, and that in such case the opening would prove too narrow to permit proper

Kropp v. Missouri P. R. Co.

handling of the animals. Plaintiff called as witnesses several farmers and stockmen who concurred in what plaintiff had said and pointed out the difficulty in case two animals should undertake to enter the opening at the same time. These witnesses say that it would be impossible for the two animals to travel side by side through the subway. They testified also that live stock traveling in opposite directions might meet in the subway and because of its limited width it would be impossible for any of them to turn around and one animal or group of animals would be compelled to back out of the subway. Furthermore, that in case of such occurrence, if any animal should be unable to protect itself against the stronger animals, it might be trampled under foot and injured. These witnesses with one accord expressed the opinion that the proposed subway would be too narrow for the use of cattle, and both too narrow and too low for the use of horses. On the other hand, defendant offered the testimony of its district engineer who stated that the type of subway which defendant intended to install was the standard type and size in general use on the tracks of the defendant corporation; that such subways had been installed under his personal supervision and were in use in Kansas, Missouri, Arkansas, Oklahoma, and Louisiana; that a thorough test of their adequacy as passageway for stock had been made; that he had personal knowledge of the subject, and that cattle and horses readily adapted themselves to the use of such subways; that the openings do not fill up with ice or snow; and that the bottoms are built of concrete and do not become wet or muddy. Another of defendant's engineers testified that he had observed such subways on numerous occasions when in actual use; that the largest horses passed through them readily; and that he had taken pictures of cattle and horses passing through subways such as defendant purposed to install. These pictures are in evidence and they are of a persuasive nature. Hereford cattle appear to be passing

Crouch v. Missouri P. R. Co.

freely through.    A horse said to weigh 1,600 pounds is likewise seen emerging from the subway, and apparently he had ample room. We are not unmindful of the pranks that a camera may play, but the pictures presented by the camera seem to have abundant support in the oral testimony, not only of the officers and employees of defendant, but in the testimony of farmers whose lands are traversed by defendant's line of railroad and where subways of the size and type under consideration are in actual use.    The testimony of these witnesses is based upon actual experience and they say such subway is adequate for plaintiff's needs.

All witnesses apparently are men of character. The witnesses for plaintiff testified as to the inadequacy of the proposed subway, in their judgment, but their testimony is not based upon actual experience or personal observation, while the witnesses for defendant based their testimony upon personal observation and actual use.

From a consideration of all the evidence, we reach the conclusion the evidence preponderates in defendant's favor, and that the subway proposed to be installed is adequate to serve the purposes for which it is intended. The judgment of the district court is set aside and plaintiff's action dismissed.

REVERSED AND DISMISSED.